IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**
**JUL 19 2013**
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| ) | |
| A BLACK ASUS COMPUTER TOWER, ) | |
| WITH A BLU RAY DRIVE, BEARING ) | |
| NO VISIBLE SERIAL NUMBER. ) | |
| ) | |
| A BLACK ASUS COMPUTER TOWER, ) | |
| BEARING NO VISIBLE SERIAL NUMBER. ) | |
| ) | CASE NUMBER 13-mj-3058-DGW |
| A SONY LAPTOP COMPUTER, MODEL ) | |
| PCG-71312L, BEARING SERIAL NUMBER ) | |
| 27523337 30009224. ) | |
| ) | |
| A HP PAVILIION LAPTOP COMPUTER, ) | |
| BEARING SERIAL NUMBER CND41103ZV.) | |
| ) | |
| A SONY CYBERSHOT DIGITAL CAMERA,) | |
| BEARING NUMBER 446181. ) | |
| ) | |
| A MICRO SD CARD IN A SD ADAPTER. ) | |
| ) | |
| A PRIMOS TRUTH CAM 46 CONTAINING ) | |
| ONE 16 GB MICRO SD CARD. ) | |

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, David J. Wargo, being duly sworn depose and say:

I am a Special Federal Officer with the United States Secret Service's Southern Illinois Cyber-crime Unit, and have reason to believe that located within the following media devices known as:

> A Black Asus computer tower with a blu ray drive, bearing no visible serial number; a Black Asus computer tower, bearing no visible serial number; a Sony laptop computer, Model PCG-71312L, bearing serial number 27523337 3000924; a HP Pavilion laptop computer, bearing serial number

**CND41103ZV; a Sony Cybershot digital camera, bearing number 446181; a Micro SD card in a SD Adapter; and a Primos Truth Cam 46 containing one 16 GB Micro SD card.**

which are items in the possession of the United States Secret Service Office, St. Clair County, Illinois, which is within the Southern District of Illinois, there is now concealed certain electronic data, including:

**SEE ATTACHED LIST ENTITLED "ATTACHMENT A"**

which constitutes evidence of the commission of a criminal offense or which is contraband, the fruits of crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of committing an offense; all in violation of Title 18, United States Code, Sections 2251, 2252 and 2252A, specifically evidence related to the production, possession, distribution and/or receipt of images of minor engaged in sexually explicit activity and other sections of the United States criminal statutes. The facts to support the issuance of a search warrant are as follows:

**AFFIDAVIT**

1. I am a Special Agent of the Illinois State Police, and have been so employed for approximately 12 years. I am also a Special Federal Officer deputized by the United States Marshal's Service to conduct investigations involving the victimization of children. My current assignment is forensic examiner/investigator with the United States Secret Service – Southern Illinois Cyber-crime Unit. My training includes 192 hours of training sponsored by the United States Secret Service on digital evidence and computer forensics examinations. I have over 300 hours of training recognized and certified by the Illinois Training and Standards Board and have been trained in the investigation of computer use in the exploitation of children as well as other

digital investigations and evidence gathering. I am a member of the Illinois Attorney General's Internet Crimes Against Children Task Force. I have assisted Federal, State, and local agencies in digital investigations. I have, on several occasions, been involved with investigations involving internet/computer crimes and have been involved in the execution of numerous search warrants.

2. I make this affidavit in support of a warrant to search **a Black Asus computer tower with blu ray drive, bearing no visible serial number; a Black Asus computer tower, bearing no visible serial number; a Sony laptop computer, Model PCG-71312L, bearing serial number 27523337 3000924; a HP Pavilion laptop computer, bearing serial number CND41103ZV; a Sony Cybershot digital camera, bearing number 446181; a Micro SD card in a SD adapter; and a Primos Truth Cam 46 containing one 16 GB Micro SD card (hereinafter "Subject Media")**; taken from the residence of Kyle W. Oberg, 327 Sunset Drive, Smithton, St. Clair County, Illinois, within the Southern District of Illinois.

3. This affidavit seeks to search for and to seize contraband, evidence or instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, specifically evidence related to the production, possession, distribution and/or receipt of images of minors engaged in sexually explicit activity.

4. The statements contained in this affidavit are based upon my training and experience as a Special Federal Officer of the United States Secret Service, officers with the Smithton, Illinois, police department as well as other law enforcement officers and investigators, and upon my consultation with personnel trained in the investigation, seizure, and analysis of computers, electronic data, and electronic media. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A exists on the **SUBJECT MEDIA**.

### Computer Searches Generally

5. It is my belief that the items sought in this affidavit for search warrant are stored electronically. Based upon my knowledge, training, and experience, I know that electronic files can be easily moved from one computer or electronic storage medium to another. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, I know that searching computerized information for evidence of crimes often requires officers to seize most or all of a computer system's central processing unit ("CPU") and/or laptop computer, input/output peripheral devices, related software, documentation, storage media, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

   a. Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert and examiner is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or

Case 3:13-mj-03058-DGW  Document 1  Filed 07/19/13  Page 5 of 12  Page ID #5

from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

  b. The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the pertinent files, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

  c. In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships

˅5˅

of the data to various parts of the computer's operation, this information cannot be easily segregated.

   d. Digital data on the hard drive that is not currently associated with any file, may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration date on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

   e. Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that are no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timeliness of usage, confirming the identification of certain users, establishing a point of reference

for usage, and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

### Child Pornography Collector Characteristics

6. Based upon my knowledge, training, and experience, I am aware that child pornography distributors/collectors:

a. Receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

b. Collect sexually explicit or suggestive materials (hard-core and soft-core pornography, whether of adults and/or of children) in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification.

c. Almost always possess and maintain their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years, and store their child pornography amongst other, otherwise legal, media or files.

d. Often correspond and/or meet others to share information and materials; rarely

-7-

destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

    e.    Often maintain their collection of child pornography in computer files located on a computer's hard drive or other computer media and that these computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache". The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## Background of Investigation

7. On July 17, 2013, Detective Jason Neff with the Smithton, Illinois, Police Department received a call from an individual with the Department of Children and Family Services ("DCFS") in Galesburg, Illinois, asking him to review a case. The DCFS worker reported that she interviewed A.O., Kyle Oberg's 6 year old daughter, after receiving a complaint from A.O.'s mother. During the interview, A.O. stated that Oberg had been taking pictures of her "front bottom" while she was in the bathtub with his digital camera and then putting them on his computer. She said that she did not know what he did with the pictures once they were on the computer. A.O. does not live with Oberg but he does have joint custody of her.

8. C.A., A.O.'s mother and Oberg's ex-wife, called Det. Neff on July 18, 2013, to file a formal complaint against Kyle Oberg. She stated that when A.O. was taking pictures of their dog, she asked A.O. why she liked taking so many pictures. A.O. told her that it was because "daddy (Oberg) likes to take pictures of me and my private areas" while at his house in Smithton, Illinois, within the Southern District of Illinois. C.A. immediately contacted the Child Advocacy Center who conducted an interview of A.O. When Det. Neff asked C.A. if she ever suspected Oberg of doing anything like this, she replied that he often looked at adult pornography when they were still married and living in Smithton.

9. On July 18, 2013, Det. Neff and Officer Aaron Keeney obtained a state search warrant for Oberg's residence seeking to seize any electronic media that might contain digital evidence related to the allegations made by A.O. The search warrant was executed that same night. Oberg was not at home. Officers also noted that Oberg had a video surveillance camera facing his driveway, and learned from C.A. that he could control the camera through a wireless router, and that he might be able to delete evidence from his computers, etc., while not actually present at the house. In light of this, the officers entered the back door of the residence and disabled the video camera before executing the search warrant.

10. The **SUBJECT MEDIA** were among the items seized from his home. Because of the lack of computer forensic experience by officers of the Smithton Police Department, the Government was contacted to assist in the investigation. Assistant United States Attorneys subsequently contacted me, because of my experience with computer forensics, to take custody of any media seized from Oberg's residence by the Smithton Police Department that I believe, at this time, to be of evidentiary value.

11. On July 19, 2013, I went to the Smithton Police Department and retrieved the **SUBJECT MEDIA** for evidence related to the production, possession, distribution and/or receipt of child pornography based on, *inter alia*, the statements of A.O. that Oberg took pictures of her "front bottom" while she was in the bathtub using a digital camera, and that he would later save the images to one of his computers. Furthermore, based on my training and experience, I know that producers and/or collectors of child pornography collect images of minors engaged in sexually explicit on a variety of media, and that they almost always possess their material in a secure location to which they have access. In addition, based on my training and experience, I know that people

who produce child pornography also possess a collection of child pornography, typically stored on digital media.

12. Based on the above information, your affiant believes there is probable cause to believe that the attached listed items, which are property constituting evidence of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, or property designed or intended for use or which is or has been used as the means of committing those criminal offenses which makes it a federal crime for any person to knowingly produce, possess, distribute or receive child pornography in interstate commerce by computer, will be found on the **SUBJECT MEDIA**.

**FURTHER AFFIANT SAYETH NAUGHT.**

David J. Wargo, Special Federal Officer
United States Secret Service

STEPHEN R. WIGGINTON
United States Attorney

ANGELA SCOTT
Assistant United States Attorney

| State of Illinois     | )      |
|                       | ) SS   |
| County of St. Clair   | )      |

Sworn to before me, and subscribed in my presence on the 19th day of July, 2013, at East St. Louis, Illinois.

DONALD G. WILKERSON
United States Magistrate Judge

## ATTACHMENT A
## ITEMS TO BE SEIZED

1. All data files, including but not limited to, graphic representations containing matter pertaining to child pornography, that is, visual depictions of children under the age of 18 years engaged in sexually explicit conduct.

2. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) containing matter pertaining to child pornography.

3. Electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United State mail or by computer, visual depictions of minors engaged in sexually explicit conduct.

4. Data files pertaining to the use of peer to peer file sharing software.

5. Data files indicating dominion, use and control of the storage device which contains them.